**EMPLOYERS INSURANCE OF WAUSAU, Appellant,**

v.

**Larry J. HALTON, Appellee.**

No. 05–89–00065–CV.

Court of Appeals of Texas, Dallas.

Feb. 27, 1990.

Rehearing Denied May 5, 1990.

Jeffrey R. Boggess, Irving, for appellant.

Roger G. Williams and Mark Darrow Wilson, Dallas, for appellee.

Before HOWELL, THOMAS, and OVARD, JJ.

## OPINION ON REHEARING

HOWELL, Justice.

The following revised opinion is now the opinion of the Court.

In this workers' compensation case, Employers Insurance of Wausau (defendant) appeals a summary judgment rendered in favor of Larry J. Halton (plaintiff). Plaintiff had served requests for admissions on defendant, along with other discovery requests, which defendant failed to answer timely. Based primarily on the deemed admissions, the trial court entered judgment that plaintiff recover approximately

$62,000 in workers' compensation payments, plus lifetime medical benefits, and $20,000 in attorney's fees.

In this appeal, defendant claims that the trial court abused its discretion in failing to grant defendant's motion to set aside the deemed admissions and to extend time to file objections and responses to plaintiff's requests for admissions. In urging this point, defendant claims that, under rule 169 of the Texas Rules of Civil Procedure, it proved "good cause" for the court to allow withdrawal of the deemed admissions. We agree with defendant's contentions. Because we conclude that its negligence in this matter did not rise to the level of conscious indifference, we reverse the summary judgment and remand this cause for trial on the merits.

## I. PROCEDURAL HISTORY

On June 16, 1988, about one month after this case was filed, plaintiff's counsel mailed requests for admissions to defense counsel, which defense counsel admits he received "[s]hortly after that date." The requests consisted of fifty-one statements covering every issue in the case. In support of his motion to set aside the deemed admissions, defense counsel asserted by affidavit that during the thirty-day response period allowed by rule 169, he had prepared handwritten responses to the discovery requests according to his usual custom. He maintains that he intended to submit these to his secretary for typing, which was also his customary practice.

By his affidavit, defense counsel also stated that on September 7, 1988, while reviewing the file for reasons unrelated to the discovery requests, he discovered that the handwritten responses had never been transcribed, mailed, or filed. He said that he immediately contacted plaintiff's counsel to explain his failure to respond and to request an extension of time to prepare answers. Plaintiff's counsel refused and informed defense counsel that he was preparing a motion for summary judgment based on the deemed admissions.

On September 9, 1988, defense counsel filed answers to plaintiff's requests for ad-

missions and delivered a copy to plaintiff's counsel. On this same date, plaintiff filed his motion for summary judgment based on the deemed admissions. Ten days later, defendant filed its motion to set aside the deemed admissions and to extend time to file objections and responses. On October 4, 1988, the trial court conducted a hearing on defendant's motions and on plaintiff's summary judgment motion. One week later, the trial court denied defendant's requests and granted summary judgment to plaintiff. We note that the case had been set for jury trial November 7, 1988.

## II. REQUIREMENTS OF RULE 169

Rule 169 of the Texas Rules of Civil Procedure provides in pertinent part:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted, without necessity of a court order unless, within thirty (30) days after service of the request, or within such time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection.

TEX.R.CIV.P. 169(1). The consequence of "deemed admissions" is that the matters are conclusively established against the admitting party unless the court, on motion, permits withdrawal or amendment of the admissions. The rule states:

> [T]he court may permit withdrawal or amendment of responses and deemed admissions upon a showing of good cause for such withdrawal or amendment if the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby.

TEX.R.CIV.P. 169(2). The "good cause" language was added to the rule by an amendment that took effect January 1, 1988. The remaining language has been part of the rule since 1973. Since the 1988 amendment, few, if any, Texas courts have examined the "good cause" requirement under rule 169.

In construing the withdrawal prerequisites of rule 169, we must give the rule a

liberal construction. TEX.R.CIV.P. 1; *cf. Sanders v. Harder*, 148 Tex. 593, 596–97, 227 S.W.2d 206, 208–09 (1950) (trial court declined to deem matters admitted where defendant substantially complied with rule). The objective of the rules of civil procedure is to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants. TEX.R.CIV.P. 1.

A number of decisions have elaborated on the policy underlying rule 169. In *Sanders* the Texas Supreme Court stated:

> The primary purpose of the rule is to simplify trials by eliminating matters about which there is no real controversy, but which may be difficult or expensive to prove. It was never intended to be used as a demand upon a plaintiff or defendant to admit that he had no cause of action or ground of defense.

*Sanders*, 227 S.W.2d at 208. It has been held that rule 169 "should not be so construed as to give one litigant an advantage over his opponent, permitting him to have judgment without supporting testimony when, without injustice to either party, the case can be opened for a full hearing on the evidence." *Gordon v. Williams*, 164 S.W.2d 867, 868 (Tex.Civ.App.—Beaumont 1942, no writ). The court in *Bynum v. Shatto*, 514 S.W.2d 808, 811 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), stated that the rules of civil procedure "were never designed as traps for the unwary nor should they be construed in order to prevent a litigant from presenting the truth to the trier of facts."

■ As a consequence of these policies, the trial court possesses broad discretion to permit or deny withdrawal of deemed admissions. *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 396 (Tex.App.—Dallas 1988, writ denied); *Rosenthal v. National Terrazzo Tile & Marble, Inc.*, 742 S.W.2d 55, 57 (Tex.App.—Houston [14th Dist.] 1987, no writ). The court's ruling on withdrawal will be set aside only upon a clear showing of abuse. *Crime Control, Inc. v. RMH–Oxford Joint Venture*, 712 S.W.2d 550, 552 (Tex.App.—Houston [14th Dist.] 1986, no writ); *Texas Employers Ins. Ass'n v. Bragg*, 670 S.W.2d 712, 715

(Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). An abuse of discretion occurs when a court acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985).

■ In most of the rule 169 cases prior to the 1988 amendment, the litigant seeking to avoid the consequences of failing to answer a request for admissions was required to show a legal or equitable excuse for his failure to answer. *Crime Control*, 712 S.W.2d at 552; *Bragg*, 670 S.W.2d at 715; *Mathes v. Kelton*, 565 S.W.2d 78, 81 (Tex.Civ.App.—Amarillo 1977), *aff'd*, 569 S.W.2d 876 (Tex.1978); *Burnett v. Cory Corp.*, 352 S.W.2d 502, 507 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). In one preamendment case from this Court, the litigant was required to show good cause for the failure to answer timely. *Curry v. Clayton*, 715 S.W.2d 77, 79 (Tex.App.—Dallas 1986, no writ). But, in a later case from this Court, we again required a showing of legal or equitable excuse, possibly because the case was tried preamendment. *Eckman*, 757 S.W.2d at 396. However, with the amendment of rule 169, it is apparent that "good cause" has been adopted as the threshold standard for the withdrawal of deemed admissions.

## III. TEXAS CASES CONSIDERING RULE 169

In *Trevino v. Central Freight Lines, Inc.*, 613 S.W.2d 356 (Tex.Civ.App.—Waco 1981, no writ), relied on by plaintiff, the respondent never answered the movant's requests and waited until the day of trial (eleven months after the requests had been served) to file a motion for extension of time. *Id.* at 358. The *uncontradicted* testimony in the case established that the failure to answer was due solely to the attorney's neglect. The *Trevino* court noted that under the agency relationship of attorney and client, the neglect of the attorney is attributable to the client. *Id.* at 359. Thus, the court found no abuse of discretion in the court's denial of the motion to extend time. *Id.*

In *Bragg*, also cited by plaintiff, the respondent was three months tardy with its responses to the requests for admissions. Respondent thereafter delayed an additional five months in filing a motion to extend the time to file its answers, said motion being filed on the date of trial (third setting). *Bragg*, 670 S.W.2d at 716. The appellate court found no abuse in the trial court's striking of the late-filed answers. *Id.*

In both *Trevino* and *Bragg*, the delays by both respondents in filing their motions for extension of time were quite lengthy (eleven months and eight months). Plainly, in *Trevino*, the attorney's conduct in waiting eleven months until the day of trial to try to withdraw the deemed admissions, upon which the movant had relied in preparing his case, caused undue prejudice to the movant and would have resulted in unnecessary delay in the trial. Apparently, the attorneys in both cases gave no valid reason for their lack of compliance with the rules. More importantly, they offered no rationale for their delay in attempting to seek relief from their defaults. Such inaction by the answering party only compounds the initial breach of the rules and constitutes the sort of attorney neglect that the amended rule seeks to abolish.

Plaintiff also directs us to *Curry v. Clayton*, 715 S.W.2d at 77. *Curry* is procedurally similar to the instant case in that the respondent filed his answers several days late and subsequently filed his motion to extend time. Movant, in the meantime, filed a motion for summary judgment. The trial court overruled respondent's motions and granted summary judgment to movant based on the deemed admissions. From that point, however, *Curry* differs from the case at hand. In *Curry*, the respondent's affidavit stated only that "his delay in filing his response to [movant]'s requests for admissions was not intentional but was merely the result of his attorney's 'busy schedule.'" *Curry*, 715 S.W.2d at 79. This Court held that "[a] statement that the delay was due to the attorney's 'busy schedule,' *without more*, is not sufficient to show good cause for permitting the late filing of a response to requests for

admissions." *Id.* (emphasis added). In the present case, as we will detail below, defendant's showing of "good cause" was much more extensive than the respondent's in *Curry*.

But, more importantly, *Bragg*, *Trevino*, and *Curry* are not controlling because they were decided before the "good cause" provision of rule 169 was effective. In our opinion, a respondent to a request for admissions is no longer required to show a legal or equitable "excuse" other than "good cause" in order to meet the first prong of the three-prong test for allowing the withdrawal of deemed admissions. Additionally, "good cause" can now be shown, even though a party may have been negligent, if his negligence does not rise to the level of conscious indifference.

Finally, in one of the most recent cases addressing withdrawal of deemed admissions, this Court held that where the respondent waited almost one year to file a motion to extend time to file answers, the trial court did not err in overruling the motion. *See Eckman*, 757 S.W.2d at 396. Interestingly, the Court noted, "[W]e recognize that a loss of an employee or a heavy caseload might, in fairness, justify a short delay by counsel in responding to discovery. We also recognize that these difficulties are an inexorable reality of the practice of law." *Id.* The Court, however, found the year-long delay to be "inconsistent with the spirit of the Rules of Civil Procedure" and found no abuse of discretion by the trial court. *Id.*

Again, in *Curry* and *Eckman*, this Court seems to have stressed the answering parties' delinquency in taking no adequate action to correct their initial failure to timely respond. A bare assertion that an attorney is "busy" cannot be enough to merit withdrawal, nor can waiting almost a year to attempt to remedy the original default.

## IV. ANALOGY TO RULE 320 AND MOTIONS FOR NEW TRIAL

■ Defendant also directs us to rule 320 of the Texas Rules of Civil Procedure, which governs motions for new trial after

default judgments, urging that cases construing this rule should guide us in our construction of rule 169. Rule 320 provides, in pertinent part, that "[n]ew trials may be granted and judgment set aside for *good cause*, on motion...." TEX.R.CIV.P. 320 (emphasis added). Courts have widely construed the "good cause" language to require proof of three elements before a new trial will be granted after default judgment: (1) that defendant's failure to answer was the result of an accident or mistake, rather than intentional or the result of conscious indifference; (2) that defendant has set up a meritorious defense; and (3) that a new trial will not cause delay or injury to the plaintiff. *E.g., Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984); *Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex.1966); *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 391, 133 S.W.2d 124, 126 (1939).

Courts have liberally interpreted the first element in the *Craddock* formula, and each case depends on its own facts. *See The Moving Co. v. Whitten,* 717 S.W.2d 117, 119 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). In deciding whether a defendant's failure to answer was the result of an accident or mistake, the "controlling fact" is the "absence of a purposeful or bad faith failure to answer." *Gotcher v. Barnett,* 757 S.W.2d 398, 401 (Tex.App.—Houston [14th Dist.] 1988, no writ). Consequently, under rule 320, "even a *slight excuse* will suffice, especially where delay or prejudice would not result" against the plaintiff. *Id.* (emphasis added).

Moreover, courts interpreting rule 320 have said that "negligence alone will not preclude setting aside of a default judgment." *Id.* at 402; *see also Ivy,* 407 S.W.2d at 213; *Dallas Heating Co. v. Pardee,* 561 S.W.2d 16, 19 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). The court must look to the knowledge and acts of the defaulting party to determine the existence of intentional disregard or conscious indifference. *Strackbein,* 671 S.W.2d at 39. In addition, where the factual allegations in the defaulting party's affidavits are not controverted, they are generally taken as true; if they set forth facts to negate intentional disregard and conscious indifference, the court must conclude that the failure to answer was due to accident or mistake. *See Strackbein,* 671 S.W.2d at 38–39; *Gotcher,* 757 S.W.2d at 401.

These cases, which construe the "good cause" language of rule 320, give us additional persuasive authority in our construction of "good cause" under rule 169. Perhaps most importantly, these cases hold that, in some situations, negligence can be a mere accident or mistake; it will not necessarily constitute conscious indifference and preclude a new trial. *See, e.g., Southland Paint Co. v. Thousand Oaks Racket Club,* 724 S.W.2d 809, 811 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (shortness of staff in insurance office does not constitute conscious indifference where plaintiff not injured by new trial); *Evans v. Woodward,* 669 S.W.2d 154, 155 (Tex.App. —Dallas 1984, no writ) (confusion in attorney's office not conscious indifference). Further, they illustrate that, where the plaintiff is not injured and the trial is not delayed, a slight excuse for the original failure to answer will suffice to comply with the rule 320 requirements.

## V. SHOWING OF GOOD CAUSE IN PRESENT CASE

■ We turn to the facts of the case at bar.[1] As related above, defense counsel's

---

1. Plaintiff asserts that the record is incomplete for lack of a statement of facts pertaining to the hearing on the motion to set aside. However, there is no suggestion that any evidence was presented at that hearing. Defendant filed the affidavit upon which it relied as an exhibit to its motion. A copy of the handwritten answers were also attached.

Where there is no evidence to be presented at a simple motion hearing, it is a widespread practice to dispense with the presence of a reporter and the making of a record. In the absence of any other showing, we will assume that this hearing followed the common course for hearings of this nature. In the absence of any showing to the contrary, we assume that the trial court only heard argument at the motion hearing. We will base our decision solely upon the papers filed with the trial court as they appear in the transcript. It is unnecessary to include argument in a statement of facts. *See Barnes v. Whittington,* 751 S.W.2d 493, 495 (Tex.

affidavit set forth a number of factual statements. In our view, the most important statements are that he was never contacted by plaintiff's counsel about the tardiness of his answers and, upon discovering the missed deadline, defense counsel immediately contacted plaintiff's attorney and notified him that the responses would be filed late. Counsel's affidavit stated that defendant disputed most of the issues that were deemed admitted, including the core issue of whether plaintiff had ever sustained an injury compensable under the worker's compensation laws. Counsel further alleged that defendant would suffer "great hardship" if the motion to set aside and to extend time were denied. In addition, to reduce any possible prejudice to plaintiff, defendant offered to pay plaintiff's reasonable attorney's fees incurred in responding to defendant's motions.

Defendant's motion to set aside and to extend time also included factual and legal arguments supporting its "good cause" showing under rule 169. Defendant's counsel pointed out that plaintiff had almost a month before trial to conduct additional discovery to prove the matters previously admitted. We reiterate that plaintiff had known since early July, when defendant filed its original answer, that defendant contested almost all material issues in the case.

## VI. CONCLUSION

Based on the testimony of counsel in his affidavit and the additional evidence in the record, we conclude that defense counsel made a sufficient showing of "good cause" under rule 169 to warrant withdrawal of the deemed admissions. Although the responses were approximately fifty-five days late, counsel was diligent in filing the answers immediately after the missed deadline came to his attention. He was also diligent in pursuing the motion to set aside and to extend time to file answers. Plaintiff never sought responses to its discovery requests during this time, and plaintiff's

counsel never objected to those failures nor filed motions to compel or motions for sanctions to rectify the alleged discovery abuses.

Regarding the prejudice requirement of the rule, plaintiff has made no specific suggestion as to how he might be prejudiced by the withdrawal of the deemed admissions. To the contrary, defendant proved a considerable lack of prejudice. It is hard to find prejudice where the parties had almost a month before the trial in which they could conduct additional discovery about the injury and other disputed fact issues. Moreover, as we have stressed, plaintiff knew that defendant contested the very "injury" upon which plaintiff's Industrial Accident Board award was based. Plaintiff cannot now claim prejudice by its "reliance" on the deemed admissions when he knew that defendant disputed almost every issue in the lawsuit.

The presentation of the merits will be served by withdrawal of the deemed admissions. Plaintiff will be required to prove such disputed matters as his injury, the producing cause of the injury, and the extent of his incapacity. As the purpose of rule 169 is to remove *uncontested* issues from the trial, we conclude that the factual matters disputed by the parties must be resolved at trial.

We have concluded that the facts of this case do not merit the ultimate sanction of deeming all facts in the case admitted against defendant. We hold that the trial court abused its discretion in failing to grant defendant's motion to set aside and to extend time to file answers. We therefore sustain defendant's first point of error.

## VII. GRANTING OF SUMMARY JUDGMENT

█ Defendant asserts in his second point of error that, because the court erred in refusing to withdraw the deemed admis-

1988); Tex.Gov't. Code Ann. § 52.046(a)(2) (Vernon 1988). *Cf. Houston Lighting & Power Co. v. Klein Independent School Dist.*, 739 S.W.2d 508, 520 (Tex.App.—Houston [14th Dist.] 1987, writ

denied) (court held that missing portions of the statement of facts were not critical to appellate review).

sions, the court erroneously relied upon them in granting summary judgment to plaintiff. In view of our holding under point one, we agree. The movant for summary judgment has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex. 1985). With the deemed admissions thus withdrawn, we hold that a number of fact issues exist and that plaintiff failed to establish defendant's liability as a matter of law. The trial court, therefore, improvidently granted summary judgment; we sustain defendant's second point of error.

Plaintiff's cross-point is left without support by our ruling on defendant's points. We reverse the summary judgment and remand this cause for proceedings consistent with this opinion.