02-10-302-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-10-00302-CV

 

 


 
 
 Michael Thomas Alexander
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 State of Texas and Kelly Griggs
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 78th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          Appellant
Michael Thomas Alexander appeals following the trial court’s
dismissal of his petition in intervention in the underlying forfeiture matter
styled The State of Texas v. $23,843.00 in U.S. Currency and 2002 Oldsmobile
Alero.   Alexander contends in two issues that (1) the trial court’s
order striking his intervention violated his due process rights because it was
rendered without notice and hearing and (2) the trial court abused its
discretion by denying Alexander’s request to withdraw the
deemed admissions and by striking Alexander’s
intervention because of those deemed admissions.  We affirm.

II. 
Background

          On
November 17, 2009, the State filed a notice of seizure and intended forfeiture
in the matter of The State of Texas v. $23,843.00 in U.S. Currency and 2002
Oldsmobile Alero.  Law enforcement seized the vehicle and currency from
Appellee Kelly Griggs in Wichita Falls, Texas, pursuant to her arrest for
failure to identify, possession of a controlled substance, and two outstanding
arrest warrants after police officers stopped the Alero in which she was a
passenger for not having operational rear tail lights.  The State alleged that
the vehicle and currency were contraband as defined by article 59.01 of the code
of criminal procedure and subject to forfeiture because the property was used
or intended to be used in the commission of a qualifying felony.  Alexander
filed a petition in intervention in the forfeiture proceeding and alleged that
he owned the seized property.  On March 2, 2010, Griggs served Alexander with
“Interrogatories, Request for Production, Request for Admissions.”  The request
advised Alexander that he was to provide answers under oath and serve the
written answers within thirty days of receipt.

          Alexander
did not answer the requests in writing by the deadline, and they were therefore
deemed admitted.  See Tex. R. Civ. P. 198.2(c).  As part of the deemed
admissions, Alexander admitted that he had no legal or equitable claim to the
property subject to the suit.  Based on the deemed admissions, Griggs filed a
motion to strike Alexander as a party for lack of standing, and the trial court
granted the motion the next day without a hearing.  Alexander was served with
the motion but not with the final order striking him as a party.  After he
learned that the trial court had granted the motion, Alexander timely filed a
motion for new trial and motion to strike deemed admissions.

          At
the hearing on his motions, Alexander testified that he was acting pro se when
Griggs served him with the discovery requests and that he personally met with
attorneys for both Griggs and the State approximately fourteen days before the
discovery deadline because he believed it would be better to answer the
discovery requests in person.  Alexander also testified that the attorneys
advised him to hire a lawyer and respond to the requests in writing.  Eleven
days after the discovery was due, Alexander hired an attorney, and three days
later, Alexander filed written responses to the request for admissions.

          Alexander
also testified at the hearing that Griggs was his ex-wife and that he had
allowed her to stay at his house because she had requested his help with
quitting drugs.  Alexander testified that he had $36,000 in cash in his house
the night that Griggs stayed there and that he had withdrawn the money to use
as a down payment on a house.  He testified that he knew that the $23,000 in
cash that police found in the Alero when Griggs was arrested was part of his
$36,000 because Griggs knew Alexander had the money in his bedroom, she
disappeared the same night as his car and money, she was a drug addict, and she
had no other means of accessing money.  However, Alexander also testified that
no one actually saw Griggs take the money or his vehicle and that he did not
notice Griggs leave the bedroom they shared that night because he had taken
sleeping pills.[2]  During the hearing,
Alexander’s attorney referred to the availability of
documents demonstrating Alexander’s
ownership of the money, but the documents were not introduced into evidence.  Following
the hearing, the trial court denied Alexander’s
motions.

          After
the trial court denied his motions, Alexander filed a motion to reconsider.  At
the hearing on that motion, Alexander introduced the record from the first
hearing, but he did not offer any other evidence to support his motion to
reconsider.  The trial court overruled the motion and issued an order severing
Alexander’s intervention from the primary case. 
Alexander then filed a notice of this appeal.

III. 
Withdrawal of Deemed Admissions

A.  Applicable
Law

          In
his second issue, Alexander contends that the trial court abused its discretion
by refusing to allow him to withdraw deemed admissions and by striking his
intervention because of those deemed admissions.  The State responds that
Alexander failed to demonstrate good cause for his failure to timely respond to
the requested discovery and that Alexander’s
uncorroborated and refutable claim to ownership of the property is not sufficient
to set aside his deemed admissions.  

          When
a party fails to properly answer a request for admissions, the matters therein
are deemed admitted as a matter of law.  Tex. R. Civ. P. 198.2(c); Wal-Mart
Stores, Inc. v. Deggs, 968 S.W.2d 354, 355 (Tex. 1998).  The trial court
does not have discretion to refuse to deem the requests admitted.  Barker v.
Harrison, 752 S.W.2d 154, 155 (Tex. App.―Houston
[1st Dist.] 1988, writ dism’d w.o.j.).  In
order for a response to requests for admissions to be proper, the responding
party must serve the requesting party with a written response within thirty
days after service of the request.  Tex. R. Civ. P. 198.2(a).  Matters that are
deemed admitted are “conclusively established as to the party making the
admission unless the court permits the party to withdraw or amend the
admission.”  Tex. R. Civ. P. 198.3.  

          The
trial court may permit a party to withdraw deemed admissions if (1) the party
shows good cause for the withdrawal, (2) the court finds that the parties relying
on the admissions will not be unduly prejudiced, and (3) the presentation of
the merits of the action will be served thereby.  Id.; Deggs, 968 S.W.2d
at 356.  Good cause is established by showing that the failure to properly
answer was an accident or mistake, rather than intentional or the result of
conscious indifference.  Wheeler v. Green, 157 S.W.3d 439, 442 (Tex.
2005); Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996).  

          A
trial court has broad discretion to permit or deny the withdrawal of deemed
admissions.  Stelly, 927 S.W.2d at 622.  An appellate court should set
aside the trial court’s ruling only if, after
reviewing the entire record, it is clear that the trial court abused its
discretion.  Id.  A trial court abuses its discretion when it acts
without reference to guiding rules or principles or acts arbitrarily or
unreasonably.  Wheeler, 157 S.W.3d at 443.  Because the good cause rule
turns on the actor’s state of mind, its
application may require a different result when the actor is not a lawyer.  Id.
at 444.  However, “pro se litigants are not exempt from the rules of
procedure.”  Id.  

B.  Discussion

          In
Van Hoose v. Vanderbilt Mortgage & Finance, Inc., the Van Hooses
asserted that their failure to respond to a request for admissions was due to
Ms. Van Hoose’s medical condition, which required her to
avoid the stress of court.  No. 03-08-00573-CV, 2009 WL
1256646, at *2 (Tex. App.―Austin May 8, 2009, pet.
denied) (mem. op.).  The appellate court determined that this did not
demonstrate that the lack of response was for good cause and denied their
request to withdraw the deemed admissions.  Id.  

          The
court in Ramsey v. Criswell also did not permit deemed admissions to be
withdrawn.  850 S.W.2d 258, 259 (Tex. App.―Texarkana
1993, no pet.).  Ramsey submitted responses two days after the deadline and did
not move for an extension of time.  Id.  Ramsey alleged that his tardy
response was due to his illness and his counsel being out of town on the last
day for filing, but he did not offer any evidence to support his assertions.  Id.
at 259–60. 
The court determined that the evidence did not support a finding of good
cause.  Id. at 260.

          In
Wheeler, Ms. Wheeler, acting pro se in a custody dispute, was allowed to
withdraw her deemed admissions.  157 S.W.3d at 443–44. 
Wheeler mailed her responses to an admissions request twenty-seven days after
she received the request.  Id. at 441.  However, this was thirty-five
days after the mailbox rule established that she had been served with the
request, making her response two days late.  Id.  Thus, the responses
were deemed admitted, and opposing counsel moved for summary judgment on the
basis of those deemed admissions.  Id.  On appeal, the court held that
Wheeler should have been allowed to withdraw the deemed admissions because
there was no indication that she knew that they were late, her tardiness
resulted from her unfamiliarity with a technical legal rule, the responses were
filed six months before the summary judgment motion was heard, and there was
nothing in the record to suggest that her case lacked merit.  Id. at 442–44. 


          The
court in Employers Insurance of Wausau v. Halton also permitted the
withdrawal of deemed admissions.  792 S.W.2d 462, 463 (Tex. App.―Dallas
1990, writ denied).  The attorney typically drafted handwritten responses to
requests for admissions and then gave them to his secretary to type and file.  Id. 
In reviewing the case file for unrelated reasons after the discovery was due,
the attorney discovered that he had never given the handwritten responses to
his secretary.  Id.  He immediately contacted opposing counsel to
explain his failure to respond and submitted the written responses.  Id. 
The same day that he filed the responses, opposing counsel filed a summary
judgment motion on the basis of the deemed admissions.  Id.  The court
held that the attorney's negligence did not rise to the level of conscious
indifference.  Id. 

          With
the above cases in mind, we cannot say that the trial court abused its
discretion by refusing to set aside the deemed admissions.  Alexander asserts
that he was mistaken as to the proper method to respond to Appellees’
requests for admissions and thought it would be best to respond in person.  To
that end, he met with attorneys for both Griggs and the State two weeks after
receiving the request.  However, Alexander testified at the hearing on his
motion for new trial that the attorneys advised him to hire a lawyer and that
he should respond to the requests in writing.  The request for admissions also
stated that the answers were due in writing within thirty days, which would
have been April 1, 2010.  Based on these facts, the trial court could have
determined that Alexander subjectively knew that his responses to the
admissions were due in writing on April 1, 2010, and that he consciously
disregarded the deadline.  Moreover, Alexander failed to offer sufficient
evidence at either hearing that he in fact had any legal or equitable interest
in the seized property.  Thus, the trial court did not abuse its discretion by
denying Alexander’s motion to strike the
deemed admissions.  See Wheeler, 157 S.W.3d at 444.  And because
the trial court did not abuse its discretion by refusing to set aside the
deemed admissions, the trial court also did not err by striking Alexander’s
intervention.[3] 

          Alexander
argues that the court’s refusal to allow him to withdraw the deemed admissions
amounts to a death penalty sanction and is improper given the facts of this
case.  However, similar to the discovery rule that discovery objections are
waived if not made timely, deemed admissions are the consequence of missing a
procedural deadline, not a sanction for discovery abuse.  Compare Tex.
R. Civ. P. 193.2(e) (waiver of objection to written discovery), and Tex.
R. Civ. P. 198.2(c) (deemed admissions), with Tex. R. Civ. P. 215 (outlining
sanctions to be imposed for abuse of the discovery process at the court’s
discretion).  The trial court did not strike Alexander’s
pleadings because he missed the deadline.  Rather, because Alexander missed the
deadline, his answers were deemed admitted.  It was on the basis of these
deemed admissions, by which Alexander admitted to having no legal or equitable
interest in the underlying forfeiture suit, that the trial court granted Griggs’s
Motion to Strike.  We overrule Alexander’s
second issue.

IV. 
Due Process

A.  Applicable
Law

          In
his first issue, Alexander contends that the trial court’s
order striking his intervention violated his due process rights because it was
rendered without notice and hearing.  After a motion to strike a petition for
intervention is filed, the would-be intervenor has the right to explain, and
show proof of, his interest in the lawsuit.  Nat’l
Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.,
866 S.W.2d 248, 250 (Tex. App.―Corpus Christi 1993, no
writ).  However, the trial court “may determine an intervening party’s
justiciable interest in a lawsuit on the basis of the sufficiency of the
petition in intervention.”  Id.  

          Even
when a party has been denied prior notice of a hearing resulting in an adverse
judgment, “[p]ost-judgment notice and the right to be heard in a motion for new
trial have been held adequate to protect litigants against a deprivation of due
process.”  Finlan v. Peavy, 205 S.W.3d 647, 655 (Tex. App.―Waco
2006, no pet.); see also State v. Rotello, 671 S.W.2d 507, 508 (Tex.
1984); Tex. Sting, Ltd. v. R.B. Foods, Inc., 82 S.W.3d 644, 648–50
(Tex. App.―San Antonio 2002, pet. denied); Jimenez
v. Transwestern Prop. Co., 999 S.W.2d 125, 129 (Tex. App.―Houston
[14th Dist.] 1999, no pet.). 

B.  Discussion

          In
Finlan, the plaintiffs received actual notice of the dismissal of their
case and had the opportunity to file a motion for new trial and request a
hearing.  205 S.W.3d at 655.  The court held that any violation of due process
that they suffered initially had been cured by the actual notice and
opportunity to be heard.  Id.  Assuming without deciding that Alexander’s
due process rights were violated by the trial court’s
failure to conduct a hearing on Griggs’s
motion to strike his petition in intervention, any alleged due process
violations were cured by subsequent events.  See id.  Alexander received
actual notice of the order striking his motion to intervene with sufficient
time to file a motion for new trial. Indeed, Alexander timely filed a motion
for new trial and a motion to reconsider and was twice able to present his
evidence and arguments that the deemed admissions should be set aside.[4]

          Alexander
argues that the hearings on his motion for new trial and motion to reconsider
were insufficient to remedy his alleged due process violations because, in
granting Griggs’s motion to strike Alexander as a party without a hearing, the trial
court shifted the burden of proof from Griggs to Alexander.  However, Alexander’s burden
of proof at these hearings was no different than his burden would have been had
there been a hearing on Griggs’s motion to strike.  The
admissions were automatically deemed admitted when Alexander failed to respond
by the deadline.  See Tex. R. Civ. P. 198.2(c); Barker, 752
S.W.2d at 155.  Based on these deemed admissions, Griggs fulfilled her burden
of proving that Alexander had no interest in the vehicle or currency.  See
Guar. Fed. Sav. Bank, 793 S.W.2d at 657.  Thus, the burden would have shifted
to Alexander to show good cause for withdrawal of the deemed admissions.  See
Tex. R. Civ. P. 198.3; Deggs, 968 S.W.2d at 356.  Alexander had two
opportunities to establish good cause for his failure to timely respond to the
request for admissions and failed to do so.  Thus, Alexander’s
opportunities to present his case before the trial court at the hearing on his
motion for new trial and at the hearing on his motion to reconsider were
sufficient to remedy any alleged due process violations that occurred by the
failure to conduct a hearing on Griggs’s motion
to strike. See Finlan, 205 S.W.3d at 655.  We therefore overrule
Alexander’s first issue.

V.  Conclusion

          Having
overruled both of Alexander’s issues, we affirm the
trial court’s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

 

DELIVERED: 
August 31, 2011









[1]See Tex. R. App. P. 47.4.





[2]Alexander testified
at the hearing on his motion for New trial that he did not purchase the Alero
that police confiscated from Griggs and has never seen the vehicle.  However,
he claims an interest in the vehicle based on his “guess” that Griggs purchased
the Alero with part of the $36,000 that he alleges she stole from him. 
Alexander also testified that he has no evidence to support that theory.





[3]A person has the
right to intervene in a proceeding if he “could have brought the same action,
or any part thereof, in his own name, or, if the action had been brought
against him, he would be able to defeat recovery, or some part thereof.”  Guar.
Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990).
 The would-be intervenor must assert a legal or equitable interest, but
Alexander admitted that he had no legal or equitable interest in the property. 
Id. 





[4]The
fact that these hearings were conducted in front of visiting judges does not
affect our analysis of Alexander’s due process rights.  Any objections to a
visiting judge must be raised before the initial hearing, which Alexander
failed to do.  See Tex. Gov’t Code Ann. § 74.053(c) (West 2005); see
Holstein v. Fed. Debt Mgmt., Inc., 902 S.W.2d 31, 37 (Tex. App.―Houston
[1st Dist.] 1995, no pet.).