

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

## NO. 02-10-00302-CV

MICHAEL THOMAS ALEXANDER                                                APPELLANT

V.

STATE OF TEXAS AND KELLY                                                APPELLEES
GRIGGS

----------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Michael Thomas Alexander appeals following the trial court's dismissal of his petition in intervention in the underlying forfeiture matter styled *The State of Texas v. $23,843.00 in U.S. Currency and 2002 Oldsmobile Alero*. Alexander contends in two issues that (1) the trial court's order striking his

---

[1]*See* Tex. R. App. P. 47.4.

intervention violated his due process rights because it was rendered without notice and hearing and (2) the trial court abused its discretion by denying Alexander's request to withdraw the deemed admissions and by striking Alexander's intervention because of those deemed admissions. We affirm.

## II. Background

On November 17, 2009, the State filed a notice of seizure and intended forfeiture in the matter of *The State of Texas v. $23,843.00 in U.S. Currency and 2002 Oldsmobile Alero.* Law enforcement seized the vehicle and currency from Appellee Kelly Griggs in Wichita Falls, Texas, pursuant to her arrest for failure to identify, possession of a controlled substance, and two outstanding arrest warrants after police officers stopped the Alero in which she was a passenger for not having operational rear tail lights. The State alleged that the vehicle and currency were contraband as defined by article 59.01 of the code of criminal procedure and subject to forfeiture because the property was used or intended to be used in the commission of a qualifying felony. Alexander filed a petition in intervention in the forfeiture proceeding and alleged that he owned the seized property. On March 2, 2010, Griggs served Alexander with "Interrogatories, Request for Production, Request for Admissions." The request advised Alexander that he was to provide answers under oath and serve the written answers within thirty days of receipt.

Alexander did not answer the requests in writing by the deadline, and they were therefore deemed admitted. *See* Tex. R. Civ. P. 198.2(c). As part of the

2

deemed admissions, Alexander admitted that he had no legal or equitable claim to the property subject to the suit. Based on the deemed admissions, Griggs filed a motion to strike Alexander as a party for lack of standing, and the trial court granted the motion the next day without a hearing. Alexander was served with the motion but not with the final order striking him as a party. After he learned that the trial court had granted the motion, Alexander timely filed a motion for new trial and motion to strike deemed admissions.

At the hearing on his motions, Alexander testified that he was acting pro se when Griggs served him with the discovery requests and that he personally met with attorneys for both Griggs and the State approximately fourteen days before the discovery deadline because he believed it would be better to answer the discovery requests in person. Alexander also testified that the attorneys advised him to hire a lawyer and respond to the requests in writing. Eleven days after the discovery was due, Alexander hired an attorney, and three days later, Alexander filed written responses to the request for admissions.

Alexander also testified at the hearing that Griggs was his ex-wife and that he had allowed her to stay at his house because she had requested his help with quitting drugs. Alexander testified that he had $36,000 in cash in his house the night that Griggs stayed there and that he had withdrawn the money to use as a down payment on a house. He testified that he knew that the $23,000 in cash that police found in the Alero when Griggs was arrested was part of his $36,000 because Griggs knew Alexander had the money in his bedroom, she

3

disappeared the same night as his car and money, she was a drug addict, and she had no other means of accessing money. However, Alexander also testified that no one actually saw Griggs take the money or his vehicle and that he did not notice Griggs leave the bedroom they shared that night because he had taken sleeping pills.[2] During the hearing, Alexander's attorney referred to the availability of documents demonstrating Alexander's ownership of the money, but the documents were not introduced into evidence. Following the hearing, the trial court denied Alexander's motions.

After the trial court denied his motions, Alexander filed a motion to reconsider. At the hearing on that motion, Alexander introduced the record from the first hearing, but he did not offer any other evidence to support his motion to reconsider. The trial court overruled the motion and issued an order severing Alexander's intervention from the primary case. Alexander then filed a notice of this appeal.

### III. Withdrawal of Deemed Admissions

### A. Applicable Law

In his second issue, Alexander contends that the trial court abused its discretion by refusing to allow him to withdraw deemed admissions and by striking his intervention because of those deemed admissions. The State

---

[2]Alexander testified at the hearing on his motion for New trial that he did not purchase the Alero that police confiscated from Griggs and has never seen the vehicle. However, he claims an interest in the vehicle based on his "guess" that Griggs purchased the Alero with part of the $36,000 that he alleges she stole from him. Alexander also testified that he has no evidence to support that theory.

4

responds that Alexander failed to demonstrate good cause for his failure to timely respond to the requested discovery and that Alexander's uncorroborated and refutable claim to ownership of the property is not sufficient to set aside his deemed admissions.

When a party fails to properly answer a request for admissions, the matters therein are deemed admitted as a matter of law. Tex. R. Civ. P. 198.2(c); *Wal-Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354, 355 (Tex. 1998). The trial court does not have discretion to refuse to deem the requests admitted. *Barker v. Harrison*, 752 S.W.2d 154, 155 (Tex. App.—Houston [1st Dist.] 1988, writ dism'd w.o.j.). In order for a response to requests for admissions to be proper, the responding party must serve the requesting party with a written response within thirty days after service of the request. Tex. R. Civ. P. 198.2(a). Matters that are deemed admitted are "conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." Tex. R. Civ. P. 198.3.

The trial court may permit a party to withdraw deemed admissions if (1) the party shows good cause for the withdrawal, (2) the court finds that the parties relying on the admissions will not be unduly prejudiced, and (3) the presentation of the merits of the action will be served thereby. *Id.; Deggs*, 968 S.W.2d at 356. Good cause is established by showing that the failure to properly answer was an accident or mistake, rather than intentional or the result of conscious indifference.

*Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005); *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996).

A trial court has broad discretion to permit or deny the withdrawal of deemed admissions. *Stelly*, 927 S.W.2d at 622. An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion. *Id.* A trial court abuses its discretion when it acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *Wheeler*, 157 S.W.3d at 443. Because the good cause rule turns on the actor's state of mind, its application may require a different result when the actor is not a lawyer. *Id.* at 444. However, "pro se litigants are not exempt from the rules of procedure." *Id.*

## B. Discussion

In *Van Hoose v. Vanderbilt Mortgage & Finance, Inc.*, the Van Hooses asserted that their failure to respond to a request for admissions was due to Ms. Van Hoose's medical condition, which required her to avoid the stress of court. No. 03-08-00573-CV, 2009 WL 1256646, at *2 (Tex. App.—Austin May 8, 2009, pet. denied) (mem. op.). The appellate court determined that this did not demonstrate that the lack of response was for good cause and denied their request to withdraw the deemed admissions. *Id.*

The court in *Ramsey v. Criswell* also did not permit deemed admissions to be withdrawn. 850 S.W.2d 258, 259 (Tex. App.—Texarkana 1993, no pet.). Ramsey submitted responses two days after the deadline and did not move for

6

an extension of time. *Id.* Ramsey alleged that his tardy response was due to his illness and his counsel being out of town on the last day for filing, but he did not offer any evidence to support his assertions. *Id.* at 259–60. The court determined that the evidence did not support a finding of good cause. *Id.* at 260.

In *Wheeler*, Ms. Wheeler, acting pro se in a custody dispute, was allowed to withdraw her deemed admissions. 157 S.W.3d at 443–44. Wheeler mailed her responses to an admissions request twenty-seven days after she received the request. *Id.* at 441. However, this was thirty-five days after the mailbox rule established that she had been served with the request, making her response two days late. *Id.* Thus, the responses were deemed admitted, and opposing counsel moved for summary judgment on the basis of those deemed admissions. *Id*. On appeal, the court held that Wheeler should have been allowed to withdraw the deemed admissions because there was no indication that she knew that they were late, her tardiness resulted from her unfamiliarity with a technical legal rule, the responses were filed six months before the summary judgment motion was heard, and there was nothing in the record to suggest that her case lacked merit. *Id*. at 442–44.

The court in *Employers Insurance of Wausau v. Halton* also permitted the withdrawal of deemed admissions. 792 S.W.2d 462, 463 (Tex. App.—Dallas 1990, writ denied). The attorney typically drafted handwritten responses to requests for admissions and then gave them to his secretary to type and file. *Id.* In reviewing the case file for unrelated reasons after the discovery was due, the

attorney discovered that he had never given the handwritten responses to his secretary. *Id.* He immediately contacted opposing counsel to explain his failure to respond and submitted the written responses. *Id.* The same day that he filed the responses, opposing counsel filed a summary judgment motion on the basis of the deemed admissions. *Id.* The court held that the attorney's negligence did not rise to the level of conscious indifference. *Id.*

With the above cases in mind, we cannot say that the trial court abused its discretion by refusing to set aside the deemed admissions. Alexander asserts that he was mistaken as to the proper method to respond to Appellees' requests for admissions and thought it would be best to respond in person. To that end, he met with attorneys for both Griggs and the State two weeks after receiving the request. However, Alexander testified at the hearing on his motion for new trial that the attorneys advised him to hire a lawyer and that he should respond to the requests in writing. The request for admissions also stated that the answers were due in writing within thirty days, which would have been April 1, 2010. Based on these facts, the trial court could have determined that Alexander subjectively knew that his responses to the admissions were due in writing on April 1, 2010, and that he consciously disregarded the deadline. Moreover, Alexander failed to offer sufficient evidence at either hearing that he in fact had any legal or equitable interest in the seized property. Thus, the trial court did not abuse its discretion by denying Alexander's motion to strike the deemed admissions. *See Wheeler*, 157 S.W.3d at 444. And because the trial court did

8

not abuse its discretion by refusing to set aside the deemed admissions, the trial court also did not err by striking Alexander's intervention.[3]

Alexander argues that the court's refusal to allow him to withdraw the deemed admissions amounts to a death penalty sanction and is improper given the facts of this case. However, similar to the discovery rule that discovery objections are waived if not made timely, deemed admissions are the consequence of missing a procedural deadline, not a sanction for discovery abuse. *Compare* Tex. R. Civ. P. 193.2(e) (waiver of objection to written discovery), *and* Tex. R. Civ. P. 198.2(c) (deemed admissions), *with* Tex. R. Civ. P. 215 (outlining sanctions to be imposed for abuse of the discovery process at the court's discretion). The trial court did not strike Alexander's pleadings because he missed the deadline. Rather, because Alexander missed the deadline, his answers were deemed admitted. It was on the basis of these deemed admissions, by which Alexander admitted to having no legal or equitable interest in the underlying forfeiture suit, that the trial court granted Griggs's Motion to Strike. We overrule Alexander's second issue.

---

[3]A person has the right to intervene in a proceeding if he "could have brought the same action, or any part thereof, in his own name, or, if the action had been brought against him, he would be able to defeat recovery, or some part thereof." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). The would-be intervenor must assert a legal or equitable interest, but Alexander admitted that he had no legal or equitable interest in the property. *Id.*

## IV. Due Process

### A. Applicable Law

In his first issue, Alexander contends that the trial court's order striking his intervention violated his due process rights because it was rendered without notice and hearing. After a motion to strike a petition for intervention is filed, the would-be intervenor has the right to explain, and show proof of, his interest in the lawsuit. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866 S.W.2d 248, 250 (Tex. App.—Corpus Christi 1993, no writ). However, the trial court "may determine an intervening party's justiciable interest in a lawsuit on the basis of the sufficiency of the petition in intervention." *Id.*

Even when a party has been denied prior notice of a hearing resulting in an adverse judgment, "[p]ost-judgment notice and the right to be heard in a motion for new trial have been held adequate to protect litigants against a deprivation of due process." *Finlan v. Peavy*, 205 S.W.3d 647, 655 (Tex. App.—Waco 2006, no pet.); *see also State v. Rotello*, 671 S.W.2d 507, 508 (Tex. 1984); *Tex. Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 648–50 (Tex. App.—San Antonio 2002, pet. denied); *Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 129 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

### B. Discussion

In *Finlan*, the plaintiffs received actual notice of the dismissal of their case and had the opportunity to file a motion for new trial and request a hearing. 205 S.W.3d at 655. The court held that any violation of due process that they

suffered initially had been cured by the actual notice and opportunity to be heard. *Id.* Assuming without deciding that Alexander's due process rights were violated by the trial court's failure to conduct a hearing on Griggs's motion to strike his petition in intervention, any alleged due process violations were cured by subsequent events. *See id.* Alexander received actual notice of the order striking his motion to intervene with sufficient time to file a motion for new trial. Indeed, Alexander timely filed a motion for new trial and a motion to reconsider and was twice able to present his evidence and arguments that the deemed admissions should be set aside.[4]

Alexander argues that the hearings on his motion for new trial and motion to reconsider were insufficient to remedy his alleged due process violations because, in granting Griggs's motion to strike Alexander as a party without a hearing, the trial court shifted the burden of proof from Griggs to Alexander. However, Alexander's burden of proof at these hearings was no different than his burden would have been had there been a hearing on Griggs's motion to strike. The admissions were automatically deemed admitted when Alexander failed to respond by the deadline. *See* Tex. R. Civ. P. 198.2(c); *Barker*, 752 S.W.2d at 155. Based on these deemed admissions, Griggs fulfilled her burden of proving

---

[4]The fact that these hearings were conducted in front of visiting judges does not affect our analysis of Alexander's due process rights. Any objections to a visiting judge must be raised before the initial hearing, which Alexander failed to do. *See* Tex. Gov't Code Ann. § 74.053(c) (West 2005); *see Holstein v. Fed. Debt Mgmt., Inc.,* 902 S.W.2d 31, 37 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

11

that Alexander had no interest in the vehicle or currency. *See Guar. Fed. Sav. Bank*, 793 S.W.2d at 657. Thus, the burden would have shifted to Alexander to show good cause for withdrawal of the deemed admissions. *See* Tex. R. Civ. P. 198.3; *Deggs*, 968 S.W.2d at 356. Alexander had two opportunities to establish good cause for his failure to timely respond to the request for admissions and failed to do so. Thus, Alexander's opportunities to present his case before the trial court at the hearing on his motion for new trial and at the hearing on his motion to reconsider were sufficient to remedy any alleged due process violations that occurred by the failure to conduct a hearing on Griggs's motion to strike. *See Finlan*, 205 S.W.3d at 655. We therefore overrule Alexander's first issue.

## V. Conclusion

Having overruled both of Alexander's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

DELIVERED: August 31, 2011

12